UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANIS ATTIA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 21-cv-01063 (APM) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Pro se Plaintiff Anis Attia, a former Staff Sergeant in the Army, brings this action against Defendant United States of America for deprivation of his constitutional rights and other violations of law allegedly committed by the Army Board for Correction of Military Records (the "Correction Board"). Plaintiff appears to seek relief pursuant to the Administrative Procedure Act (APA), Tucker Act and Little Tucker Act, and the court's general equity jurisdiction. Both parties move for summary judgment. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

**II.   BACKGROUND**

Plaintiff served three tours in Iraq, including one from December 8, 2007, to March 15, 2009. AR006.[1] Shortly after his deployment on this tour, Military Police detained Plaintiff for reportedly leaving "naked pictures" on a public computer and possessing several devices containing many pornographic images and videos in violation of a General Order prohibiting

---

[1] Defendant's Appendix containing portions of the Administrative Record is at ECF Nos. 49-1 and 49-2. Citations to the Administrative Record will be to "AR" and the last three numbers of the Administrative Record Bates number.

pornography.  AR010.  On October 25, 2008, after a hearing, an administrative separation board (ASB) recommended that Plaintiff be discharged from the Army "under honorable conditions (General)" for a pattern of misconduct.  AR013.  The Army administratively discharged him accordingly on April 14, 2009.  AR014.

Plaintiff thereafter petitioned the Correction Board for reinstatement, among other relief, and on December 6, 2012, the Correction Board voided Plaintiff's discharge on the basis that the ASB was improperly convened.  AR080–081.  The Correction Board noted that, although this was a denial of due process, it was not proof of exoneration.  AR081.  Plaintiff was reinstated in the Army with back pay but was denied expungement of his records and payment of non-cash compensation.  AR082.

Plaintiff retired from active duty in 2015 but continued petitioning the Correction Board to alter his service record.  AR004–005.  On November 9, 2020, the Correction Board amended its earlier ruling by referring him to a Standby Advisory Board (STAB) to consider retroactive promotion and pay and issuing a statement of non-rated time.  AR403, 528, 554.  The STAB did not select Plaintiff for promotion.  AR021.  Finally, on November 1, 2024, the Correction Board considered additional claims from Plaintiff.  AR003–025.  The Correction Board determined that it could not award non-cash benefits, Plaintiff was not entitled to discretionary awards, Plaintiff did not demonstrate that the content of his prior reports was substantially incorrect, there were no procedural faults with the STAB not promoting him, and there was no error or injustice that warranted a declaration of full exoneration.  AR020–022.

Plaintiff filed the instant suit on April 14, 2021.  *See generally* Compl., ECF No. 1 [hereinafter Compl.].  Plaintiff then amended his complaint on October 10, 2022, and a second time on June 15, 2025.  *See generally* Am. Compl., ECF No. 6 [hereinafter FAC]; Second Am.

Compl., ECF No. 36 [hereinafter SAC]. The complaints are hard to discern, but the court understands Plaintiff to be asserting the following: (1) his inability to collect interest on back pay violates equal protection under the Fifth Amendment, SAC ¶ 30; FAC ¶ 17; (2) the Army's refusal to include the monetary value of certain fringe benefits constitutes unlawful deprivation of property without due process under the Fifth Amendment, SAC ¶ 30; FAC ¶ 18; (3) the Army violated the APA by refusing to promote or bestow awards upon him because of his alleged misconduct, SAC ¶ 28; and (4) the Army violated the APA by maintaining records showing his discharge was overturned due to procedural reasons only, due to the Correction Board's failure to consider nonfrivolous arguments, *id.* ¶¶ 24–29.[2] Plaintiff moves for summary judgment. *See generally* Pl.'s Mot. for Summ. J., ECF No. 40 [hereinafter Pl.'s Mot.]. Defendant cross-moves for summary judgment or, in the alternative, to dismiss. *See generally* Def.'s Mot. to Dismiss & Cross-Mot. for Summ. J., ECF No. 41 [hereinafter Def.'s Mot.].

## III. LEGAL STANDARD

In APA cases, "summary judgment is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Louisiana v. Salazar*, 170 F. Supp. 3d 75, 83 (D.D.C. 2016). In such cases, the district court "sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted). The court's factual review does not extend beyond the administrative

---

[2] Plaintiff explicitly brings his awards and records claims in his Second Amended Complaint. SAC ¶¶ 24–29. However, he does not detail his two constitutional claims in his Second Amended Complaint, instead stating that he "maintains his claims" for interest and fringe benefits from his First Amended Complaint. *Id.* ¶ 30. Ordinarily, amended complaints supersede prior complaints, but courts often permit pro se amended complaints that specifically reference prior filings to serve as addenda rather than replacements. *See Webb v. U.S. Veterans Initiative*, 993 F.3d 970, 973 (D.C. Cir. 2021) (finding pro se amended complaint sufficiently referred to claim in prior complaint to incorporate claim by reference). The court permits Plaintiff's two constitutional claims in his First Amended Complaint to be preserved by their reference in the Second Amended Complaint.

3

record, and "its role is limited to determining whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Philip Morris USA Inc. v. FDA*, 202 F. Supp. 3d 31, 45 (D.D.C. 2016) (cleaned up). The APA requires a court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion," in excess of statutory authority, contrary to constitutional rights, or "without observance of procedure required by law." 5 U.S.C. § 706(2). Judicial review of determinations made by the Correction Board follows "an unusually deferential application of the arbitrary or capricious standard of the APA," *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (internal quotation marks omitted), as the function of the court "is not to serve as a super correction board that reweighs the evidence," *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998).

## IV.    DISCUSSION

### A.    Jurisdiction

Plaintiff first seeks a declaration that the Army violated his constitutional rights by not affording him the value of interest and fringe benefits. Defendant argues that the Tucker Act precludes the court's subject matter jurisdiction over these claims. Def.'s Mot., Def.'s Mem. of P. & A. in Supp. of Def.'s Mot., ECF No. 41-1 [hereinafter Def.'s Mem.], at 11–14.

The Tucker Act confers exclusive jurisdiction to the Court of Federal Claims over monetary claims against the United States that exceed $10,000. *Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see* 28 U.S.C. §§ 1346(a), 1491. Monetary claims can be brought against the federal government only if the United States has waived its sovereign immunity from suits through a contract, a money-mandating statute, or constitutional provision. *United States v. Testan*, 424 U.S. 392, 398, 400 (1976). This Circuit follows a "bright line rule" that Tucker Act jurisdiction applies when the plaintiff requests a monetary award in the

4

complaint. *Kidwell*, 56 F.3d at 285. Such a request could be made "explicitly or in essence," as a plaintiff may not engage in "artful" pleading to remain in district court by disguising a monetary request as equitable relief. *Id.* at 284 (internal quotation marks omitted). However, an equitable claim is not "in essence" a monetary claim merely because a plaintiff "hints at some interest in a monetary reward from the federal government or because success on the merits may obligate the United States to pay the complainant." *Id.* Thus, the Tucker Act does not apply to equitable claims with "considerable value independent of any future potential for monetary relief." *Id.* (internal quotation marks omitted).

The court previously held that Plaintiff's Fifth Amendment fringe benefits claim was not an explicit demand for money. Mem. Op. & Order, ECF No. 14, at 4. But Defendant now contends that Plaintiff's constitutional claims for equitable relief are merely dressed-up claims for monetary damages without additional value. Def.'s Mem. at 11–14.

The court disagrees. Due process and equal protection claims involve no money-mandating provisions, so Plaintiff's claims cannot be heard in the Court of Federal Claims. *See Radin v. United States*, 699 F.2d 681, 685 n.8 (4th Cir. 1983) ("[I]t is well settled that there is no Tucker Act jurisdiction over a claim founded solely on a fifth amendment procedural due process claim, because '[t]he Due Process Clause simply cannot be read to mandate money damages be paid.'" (quoting *Ala. Hosp. Ass'n v. United States*, 656 F.2d 606, 609 (Ct. Cl. 1981))). A plaintiff therefore cannot be sidestepping exclusive Tucker Act jurisdiction if the Court of Federal Claims could not exercise jurisdiction in the first place. *See Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("[T]he absence of a money-mandating source [is] fatal to the [Court of Federal Claims]'s jurisdiction under the Tucker Act."). Therefore, Plaintiff's two Fifth Amendment claims will be taken at face value as requests for non-compensable declarations

5

of constitutionality.  The court can hear such claims under the APA.  *See, e.g.*, *McKoy v. Spencer*, 271 F. Supp. 3d 25, 34, 36 (D.D.C. 2017) (holding that the court could consider the plaintiff's Fifth Amendment claim under the APA but dismissing claim insofar as it sought money damages).[3]

### B.  Fifth Amendment Equal Protection Interest Claim

Plaintiff seemingly contends that he is subject to unconstitutional equal treatment because, unlike in other similar circumstances, the law does not grant servicemembers who are wrongly administratively discharged interest on back pay awards.  By way of comparison, he notes that interest payments are available to unlawfully discharged civilian employees and to servicemembers with overturned court-martials.  FAC ¶ 17; *see* 5 U.S.C. § 5596(b)(2) (waiver of sovereign immunity for interest payments for unlawful personnel actions); 10 U.S.C. § 1552(c)(4) (court-martialed servicemembers).

Equal protection claims are assessed under rational basis review unless the challenge involves a suspect classification or infringement of fundamental constitutional rights.  *Mark v. Republic of the Sudan*, 77 F.4th 892, 897 (D.C. Cir. 2023).  The relevant statutes therefore must prevail "against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

---

[3] Defendant also objects to jurisdiction on Plaintiff's education reimbursement claim.  Def.'s Mem. at 12.  In his original Complaint, Plaintiff asks the court to "[d]irect the [Correction Board] to . . . correct plaintiff's records to show a refund for all the education debt he incurred when he failed certain courses funded by Army TA."  Compl. ¶ 27. Here, Defendant is correct that this is explicitly and fundamentally a monetary request, so the bright line rule applies and the court lacks jurisdiction.  *See Kidwell*, 56 F.3d at 286; *see also Van Allen v. U.S. Dep't of Veterans Affs.*, 925 F. Supp. 2d 119, 125 (D.D.C. 2013) (finding request to correct records was only meaningful to extent it would permit further monetary recovery).  Regardless, the court considers this claim abandoned after Plaintiff failed to include or reference it in his two successive amended complaints.

A rational basis exists here. Congress's reason not to afford interest on back pay to servicemembers like Plaintiff who are reinstated after a wrongful administrative separation may simply be that Congress did not believe such circumstances warranted it. Congress could have reasoned that payment of interest on back pay was warranted to fully remedy the particular harm caused by a criminal conviction, even if later set aside. And it could have viewed such payments as appropriate for civilian employees who lose wages for discriminatory reasons. Plaintiff's equal protection claim therefore fails. *Cf. Neczypor v. United States*, No. 24-1155, 2025 WL 658352, at *3 (Fed. Cl. Feb. 28, 2025) (holding that there was no waiver of sovereign immunity under 10 U.S.C. § 1552 for back pay interest claims other than for those whose court-martial convictions are set aside even if it would create "'absurd' results" because "policy questions are for Congress to decide, not [the] Court").

### C.     Fifth Amendment Due Process Fringe Benefits Claim

Plaintiff asserts that fringe benefits—"health and dental insurance, quality of life programs, and Commissary and Exchange benefits"—are used by the Army to increase members' compensation, establishing a property interest for military members. FAC ¶ 18. Plaintiff argues that refusing to include the value of such benefits in back pay to improperly discharged servicemembers constitutes a deprivation of a property right. *Id.*; Pl.'s Mot. at 3.

In assessing a due process property rights claim, courts "apply a familiar two-part inquiry [to] determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014) (internal quotation marks omitted). Property interests are not established in the Constitution but stem from independent sources of right. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To demonstrate a property right, one "must have more than an abstract

7

need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to" the asserted property. *Id.*

Plaintiff fails to establish that he has a property right in the fringe benefits, asserting only that their dollar amount is advertised to recruits. *See* FAC ¶ 18. Even if Plaintiff had offered substantive arguments to that point, the weight of authority tips against him, as courts generally do not regard government employment benefits as property under the Fifth Amendment. *See, e.g.*, *Smith v. Harvey*, 541 F. Supp. 2d 8, 15–16 (D.D.C. 2008) ("[Plaintiff] has suffered no violation of her right not to be deprived of property without due process because there is no constitutionally-protected property interest in continued military service or the employment benefits that come with military service."); *D.C. Ret. Bd. v. United States*, 657 F. Supp. 428, 432–33 (D.D.C. 1987) ("It is uniformly held that such [statutory retirement and disability] benefits are not 'property' sufficient to trigger substantive constitutional protection."). Consequently, the lost value of fringe benefits cannot support a due process claim, and Defendant is awarded summary judgment.

### D. APA Promotion and Awards Claim

Plaintiff argues that "the [Correction Board] is justifying its refusal to promote [Plaintiff] and bestow upon him awards and decoration because of the false charges alleged against him." SAC ¶ 28. Insofar as Plaintiff is asking the court to review the merits of the Army's refusal to promote him, such a claim is nonjusticiable. *See Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 140 (D.D.C. 2014). Plaintiff later insists, however, that he is not asking the court to order the Army to promote him or bestow awards upon him but rather to direct the Army to "come up with a fair way to evaluate him" or adjust its ordinary procedures to accommodate his unique circumstances. Pl.'s Reply in Supp. of his Pl.'s Mot. & in Opp'n to Def.'s Mot., ECF No. 45 [hereinafter Pl.'s Reply], ¶¶ 7–10. Plaintiff does not identify any statutes or other provision that would compel the

Army to adjust its procedures for persons in his circumstances, *see generally* SAC; Pl.'s Mot., nor can the court say it was arbitrary and capricious for the Army to use its ordinary standards for Plaintiff without accommodations. Plaintiff does not provide any evidence beyond conclusory statements that the STAB relied on expunged records in deciding not to promote him or provide him awards. *See* SAC ¶ 28. As Plaintiff does not demonstrate how his non-selection violates the APA, Defendant is awarded summary judgment as to this claim.

### E.  APA Failure to Exonerate Claim

Finally, Plaintiff contends that he is entitled to a "full exoneration," Pl.'s Mot. at 3, which he alleges is impossible "[a]s long as the record is not fully corrected." FAC ¶ 14. When pressed by Defendant on which record Plaintiff actually seeks corrected, Plaintiff does not delve into particulars but instead states that he believes the whole investigation leading to his separation involved fabricated charges and that he wants to be substantively cleared of wrongdoing. Pl.'s Reply ¶ 5. The court understands Plaintiff's claim to take issue with statements like this in the Correction Board record of proceedings: "[I]t appears that the applicant was technically denied due process—as opposed to proof of exoneration for his misconduct—and is therefore entitled to reinstatement in the Regular Army . . . ." AR081.

Plaintiff argues that the Correction Board "ignor[ed] the elephant in the room" by neglecting to exonerate him based on the ASB "fail[ing] to present a list of the evidence," "to state their findings," "to disclose how the evidence weighted [sic] against or for the plaintiff," "mention what they found," or see how his due process rights were stampeded by shifting the burden of proof. SAC ¶¶ 24, 27. But these arguments appear to be assertions that the ASB relied on unfair procedures when recommending he be discharged, not that he did not engage in the misconduct alleged. The Correction Board vacated Plaintiff's discharge because procedural errors denied him

9

due process.  AR081.  It was well within the Board's discretion not to also exonerate him based on that error.

Plaintiff further claims that the Correction Board relied on dubious witness reports alleging that the image of the naked man on the public computer was him rather than favoring an additional witness who did not believe Plaintiff was in the picture.  SAC ¶ 26.  Regardless of whether Plaintiff was the naked man, Plaintiff also was found to be in possession of over 1,000 pornographic images and over 100 pornographic videos on various personal devices.  AR010.  So, even if Plaintiff is right about the public computer image, that successful contention alone would not exonerate him.  Further, to engage with disputes over the relative credibility of witnesses would be to reweigh the evidence, which is not the court's role.  *See Charette*, 996 F. Supp. at 50.  Decisions of military corrections boards are entitled to an "unusually deferential application of the arbitrary or capricious standard of the Administrative Procedure Act."  *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (internal quotation marks omitted).  Plaintiff does little more than disagree with the Correction Board's conclusions.  He therefore has failed to show that the Correction Board's decision not to exonerate him was arbitrary and capricious.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 40, is denied, and Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment, ECF No. 41, is granted.

A separate final appealable order accompanies this Memorandum Opinion.

Dated: February 26, 2026

Amit P. Mehta
United States District Judge